### ABEL v. BREWSTER.

*(Supreme Court, General Term, Third Department.  November 26, 1890.)*

1. PAROL EVIDENCE—LOST DEED—EVIDENCE OF POSSESSION.

   To prove loss of a deed to P. it was shown that in a certain book kept by an alleged agent of P.'s grantor a receipt for the deed appeared, which briefly described

the land, and was signed "P., his mark," but there was no witness to the signature. *Held* insufficient to show that P. was ever in possession of the deed, and to admit secondary evidence of its contents.

2. DESCENT—LEGITIMACY—EVIDENCE.

One M. testified that P. was his father, but there was no explanation of the difference in the surnames. *Held,* that it could not be said as matter of law that M. was the legitimate child of P.

Appeal from circuit court, Essex county.

Action by Mary E. Abel against Benjamin T. Brewster. Defendant appeals.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*Chester B. McLaughlin,* for appellant. *Richard L. Hand,* for respondent.

LEARNED, P. J. This is an action of ejectment. On the trial at circuit the learned justice directed a verdict for the plaintiff, and the defendant appeals. The land in question is 100 acres, in the S. ½ of lot 277, township 11, Old Military. The defendant is in possession, and of course plaintiff can only succeed by proving a valid title in herself. She proved, first, letters patent from the state of New York to Gerrit Smith of the land in question, issued August 10, 1849, recorded in Essex county, September 16, 1850. She claims that Gerrit Smith conveyed the land by a deed dated November 4, 1847, to Stephen Pembroke. No such deed was produced, and the plaintiff endeavored to prove its delivery, its loss, and its contents by parol.

The first point necessary is to show the loss of the deed. It appears by the testimony taken on commission of Robert McCray that Stephen Pembroke died about 1859, near New York city. There is the further evidence of one Oliver Abel, the husband of plaintiff, that he has inquired of Robert McCray, of Charles B. Ray, of parties in Sharpsburg, and in the health department records of New York city, and cannot find the place of Pembroke's death, or the alleged deed. This is all the evidence that such an alleged deed cannot now be found. The plaintiff, in order to prove the existence and delivery of such a deed, gave in evidence extracts from a memorandum book kept by Gerrit Smith, deceased, as follows: On page 8: "Account of my distribution of land among colored men. My conveyance is in every instance by my quitclaim deed, and the consideration expressed in every deed is as follows: ' Witnesseth that the party of the first part, for and in consideration of one dollar and of his desire to have all share in the means of subsistence and happiness which the bountiful God hath provided for all.'" Here follows the name of each grantee, his town or city, under the head of his county, a description of the premises conveyed to him, and the date of his deed. On page 105: "Deeds all dated November 1, 1847. Second distribution. Stephen Pembroke. Residence, New York; property, township 11, Old Military tract, lot 277, south half; much water; 100 acres." The plaintiff further gave in evidence an extract from a certain book kept by Charles B. Ray, deceased, as follows: "We, the undersigned, residing in the city and county of New York, do hereby acknowledge the receipt by the hand of Charles B. Ray and James McEwen Smith of a deed granted to each of us by Gerrit Smith, of Petersboro, for the piece of land described in the line in which are written our names, said described land being in the state of New York. Essex county; lot 277, Old Military tract; south half; township 11; 160; part lake. STEPHEN PEMBROKE, New York, his mark." The words "described in the line" are not in the printed case, where the words are "in the described lots." The plaintiff insists that the case is erroneous. All the preceding entry is in the handwriting of Charles B. Ray. The mark of Stephen Pembroke is not witnessed. The plaintiff further gave in evidence the testimony of Robert McCray, taken on commission. McCray testified that his father's name was Stephen Pembroke; that he and Jacob McCray were the only living children of Stephen Pembroke, and that the deceased children left no descendants; that he and

Jacob had lived many years in Alabama, and knew nothing of their father's owning land in New York until they received a letter from Charles B. Ray, which was about 1882. The plaintiff gave in evidence a deed of the premises to herself from Robert McCray and Jacob McCray, dated November 5, 1883. When the plaintiff rested the defendant moved for a nonsuit. The court, in a very full statement of the case, said that it was not clear enough either way to hold as matter of law, and denied the motion. Defendant offered no evidence, and, on being asked if he desired to go to the jury, said, "No." The court said that with some hesitancy it would direct a verdict for plaintiff. Defendant's counsel then said they desired to go to the jury, on two questions, stating them; and the court said that if either party desired to address the jury they could do so. Plaintiff then urged that she was entitled to a verdict, and the court asked the plaintiff if she was willing to take a direction for a verdict, the defense requesting to go to the jury; and the plaintiff answered affirmatively. A verdict for plaintiff was then directed. While there was some uncertainty or inconsistency in the defendant's position, yet the final result was that the defendant asked to go to the jury, and the plaintiff asked the court to direct a verdict, and the court did so.

We think that the evidence did not justify such direction. Gerrit Smith's title was acquired August 10, 1849. If there was evidence of a deed to Pembroke such deed was dated November 1, 1847. There is no evidence that it was delivered at a later day. The extract on page 119 of Smith's book does not show this. In the absence of contrary proof, the date of the deed is presumed to be the date of the delivery. The deed was a quitclaim, and conveyed only such title as Smith had when it was executed. Again, the so-called "receipt" in the book kept by Charles B. Ray is not shown to have been signed by Pembroke. Such unsigned receipt, if evidence at all of the statements in it, is not such evidence that the court could hold as a matter of law that it established the possession of the deed by Pembroke. It could hardly be said to be a contemporaneous entry by Ray, because its form showed that it had no effect until signed by Pembroke. Even if Ray's entry of his doings would be evidence against the defendant, which is by no means certain, this receipt, without proof of the signature, amounted to nothing. The question whether sufficient proof of the loss of an instrument had been made is generally one for the trial court, and therefore we pass that over, simply remarking that there is very slight or no proof of any search for the deed by a person entitled to its possession. Abel, the witness, could not find out where Pembroke died, and he could not have, therefore, searched for the deed in any place where, so far as he knew, it would probably be. Then as to the proof that the two McCrays were legitimate children and heirs of Pembroke. They did not bear the name of their alleged father. The one who testified did not know his father's business. He never saw these lands, and only heard about them when this plaintiff was trying to buy up a title. No explanation is given why they do not bear their father's name. No proof of the marriage of the parents, except the witness says his mother's name was Surena Pembroke. The plaintiff cites the case of *Caujolle* v. *Ferrie*, 23 N. Y. 90. But we see nothing in that case which determines this. The sole witness, Robert McCray, gives no facts from which it might be inferred that Stephen Pembroke and Surena were lawful husband and wife. Of course, if Robert was their legitimate child, he could not have any personal knowledge of their marriage. It does not appear that they ever lived together. While it is not distinctly stated, yet it is plainly implied from Gerrit Smith's memoranda that the parents were negroes or mulattoes; at least that such was Pembroke. And as the mother was in Maryland at her death, in 1850, it is quite probable that she was in slavery. Of course, we do not mean that one may not be bound by a name which is not his true name. That is not the question here. The question is whether one whose name is McCray, and who, in reply to interrogations attached to a

commission, testifies simply that Stephen Pembroke was his father, gives such evidence that he is Stephen Pembroke's legitimate child, that the court can refuse to submit the decision of the fact to the jury. Certainly, if a man and woman cohabit, and children are born to them who do not bear the surname of the father, the ordinary inference is that the children are illegitimate. The inference might be rebutted by proof that the man and woman had been married previously to the birth of the children, or by other circumstances. But we think a court could not properly hold that these facts established legitimacy of the children as a matter of law. We think a verdict for the plaintiff should not have been directed. Judgment reversed, new trial granted, costs to abide the event.